## No. 37,554

In the Matter of the Estate of J. M. Osborn, Deceased, DELIA OSBORN, *Appellant,* v. FLOYD D. CASSITY, Executor of the Will of J. M. Osborn, deceased; KATHRYN MUELLER, IDA E. PEREZ, and ALWYN T. PERRIN, a minor, *Appellees.*

(208 P. 2d 257)

Opinion filed July 9, 1949.

*Hal E. Harlan,* of Manhattan, argued the cause, and *John Berglund, Jr.,* of Clay Center, and *A. M. Johnston,* of Manhattan, were with him on the briefs for the appellant.

*Frank C. Baldwin,* of Concordia, argued the cause, and *A. C. Bokelman,* and *F. R. Lobaugh,* both of Washington, and *Charles L. Hunt,* of Concordia, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ARN, J.: This is an appeal from a judgment of the district court affirming a probate court judgment of July 13, 1946, which admitted to probate the will of J. M. Osborn, deceased; decreed that a certain postnuptial release executed by decedent's widow barred her from any interest in the estate; and appointed an executor of the will and fixed his bond. The district court also overruled motions by the widow to vacate the probate court judgment and to set aside the postnuptial release, and then dismissed the widow's appeal. Hence, the matter comes here on the widow's appeal.

The pertinent facts may be related by the following calendar of events:

In 1931, J. M. Osborn's first wife died and left three daughters surviving. On June 23, 1932, Osborn married this appellant, then Delia Lively. No children were born of the marriage. They lived together until March 25, 1935, on which day they separated and Delia Osborn left for California and never thereafter communicated with her husband, the deceased, although they were never divorced. Before Delia Osborn left she received $250 from her husband J. M. Osborn, and she executed, acknowledged, and delivered to him what is termed a "release." The release follows:

"Know All Men By These Presents, That I, Delia Osborn, wife of J. M. Osborn, of Clifton, Kansas, being now desirous of hereafter living separate and apart from my said husband and maintaining myself separately from him, and knowing my rights under the law as his wife, do hereby, for value received, forever release him, the said J. M. Osborn, from any and all obligation to support and maintain me as his wife in any respect, and I hereby expressly waive any and all rights and claims that I may have as his wife in and to any and all property, both real and personal, that my said husband may have, or hereafter acquire, it being my intention hereby to relieve and release the said J. M. Osborn, my said husband, from any and all responsibility or liability to me, both now and in the future, my relation to him in the future being the same as if I had never been married to him.

"Dated at Clifton, Kansas, this 25 day of March, A. D. 1935."

On October 21, 1941, J. M. Osborn executed his last will, leaving his property to his two living daughters and his grandson, a son of a third deceased daughter. The will made no mention of the wife, Delia Osborn. On June 8, 1946, Osborn died. June 18, 1946, the two daughters filed in probate court a petition entitled "Petition For Probate Of Will" which sought: (1) Admission of the will to probate; (2) appointment of an executor, and (3) adjudication of the postnuptial release to be in full force and effect and valid and binding as against the widow, Delia Osborn. The same day the probate court made an order stating that Ida E. Perez and Kathryn Mueller (the two daughters of deceased) appeared and filed their petition for admission of the will to probate, and fixed the time and place of hearing as July 13, 1946, at the probate courtroom. A "Notice of Hearing" was published and a copy mailed by the attorney for petitioners (envelope bore his return address) to Delia Osborn at her last-known address in California. The notice of hearing advised in detail of the contents of the petition, and that petitioners prayed for a decree that the postnuptial release of Delia Osborn dated March 25, 1935, was valid and binding, and that Delia Osborn was not entitled to a widow's allowance or distributive share of the estate nor any other interest or share therein. The widow contended she never received a copy of the "Notice of Hearing," but this fact seems to have been resolved against her by the finding of the district court.

On July 13, 1946, a hearing was had before the probate court and the resulting order was entitled "Order Admitting Will to Probate and Record." Actually, however, the order of July 13, 1946: (1) Admitted the will of J. M. Osborn, deceased, to probate; (2) appointed an executor and fixed his bond; and (3) decreed that the

postnuptial agreement and release executed by Delia Osborn under date of March 25, 1935, was valid and binding and that Delia Osborn had waived all her rights as a widow and heir-at-law of J. M. Osborn, deceased, and was not entitled to a widow's allowance or any distributive share whatsoever in his property and estate; and that the release constituted a consent to the will and no further election or consent by the widow is necessary.

October 25, 1946, the widow filed in probate court (1) a motion to set aside the judgment of July 13, 1946, insofar as it attempted to adjudicate the validity of the release dated March 25, 1935; and (2) a petition to set aside the postnuptial release and to elect to take under the laws of intestate succession. On November 14, 1946, the executor and petitioners (appellees here) filed in probate court their motion to dismiss the widow's petition. On November 22, 1946, these matters were heard by the probate court and the widow's motion to set aside the probate court judgment of July 13 was denied and the widow's petition to set aside the postnuptial release and to elect to take under the law was dismissed. December 9, 1946, the widow appealed to the district court from that part of the probate court order of July 13 decreeing the postnuptial release to be valid and binding upon her. On December 20, 1946, the widow filed another appeal in which she appealed from the order admitting the will to probate, the order adjudging the validity of the postnuptial release, and from all orders of the probate court made on November 22, 1946.

The proceedings were then certified to the district court where the widow on January 25, 1948, filed a motion to set aside the probate court judgment of July 13, 1946, insofar as it concerned the postnuptial agreement, but the district court concluded to hear the case upon its merits and upon all issues and take the determination thereof under advisement. The trial was had on December 11, 1947, and on March 1, 1948, the district court entered its order of judgment affirming the probate court order of July 13, 1946; overruling the widow's motion and petition filed in probate court on October 25, 1946, and the widow's motion of January 25, 1948, filed in the district court; dismissing the widow's appeal from that part of the probate court judgment of July 13, 1946, relating to an interpretation of the release; and remanding the proceedings to the probate court with directions to proceed with the administration of the estate. The widow's motion for new trial was subsequently overruled, and she appeals to this court.

Appellant presents twelve specifications of error, but as far as this appeal is concerned, the vital one is stated thus:

"The Court erred in deciding that the Probate Court acquired and had jurisdiction to admit decedent's Will to probate and upon the same petition to adjudicate the issues therein tendered as to the meaning and validity of the postnuptial release."

It is appellant's contention in this respect, that at the hearing upon the petition to probate a will, the probate court cannot simultaneously with admitting the will to probate and appointing an executor, determine a controversy with the surviving spouse over the validity and effect of a postnuptial contract or release, and cannot at that time and upon the petition to probate a will, acquire jurisdiction over the subject matter of such a controversy and uphold the contract or release, thus barring the spouse from any interest in the estate.

Of course it could not be contended, and appellant does not contend, that the probate court has no right, in a proper proceeding before it, to determine the validity and effect of an instrument such as the postnuptial agreement or "release" now before us. The interpretation of such an instrument and the adjudication of its validity, upon a proper application or petition therefor, is a recognized function of the probate court, because it is a controversy seeking something out of the assets of the estate and must be determined before distribution of the assets (*In re Estate of Thompson*, 164 Kan. 518, 522, 190 P. 2d 879). The questions arising here are whether the petition to probate the will may raise the issue of the validity of a postnuptial release or agreement, and whether the probate court may, upon such a petition, proceed to adjudicate the validity of such an instrument at the same time and at the same hearing at which the will is admitted to probate.

We have concluded that if these questions are to be resolved in favor of appellant, this cause should be remanded to the probate court. Thus there is no occasion to discuss or pass upon the several other matters which appellant specifies as error.

Appellees cite *Shriver v. Besse*, 163 Kan. 402, 183 P. 2d 407, as authority for the procedure followed below. True, the Shriver petition for probate of the will also sought to determine the validity of an antenuptial contract, but there the widow answered before the date set for hearing on the petition, alleging that the antenuptial contract was invalid and that issue was joined, contested, and

determined without any question having been raised as to the proper procedure under the probate code. It was not challenged by the widow, and that question was not before this court in the Shriver case. Obviously, there was nothing to prevent an adjudication by the probate court of such matters where all the proper parties entered their appearance, joined issue, and voluntarily sought to have those matters contested and determined. The Shriver case, therefore, is not in point with the question here involved.

The probate code contemplates that the real purpose of the petition to probate is to determine whether the decedent died testate, to appoint a representative of the estate, and to deal with such other preliminary matters as are clearly incidental thereto. However, it is not the function of the probate court, *upon a petition for probate of a will*, to adjudicate the rights of the heirs or determine the persons entitled to the estate. It cannot be said that the adjudication of the validity of the postnuptial release was incidental to the probate of the will. That was a matter which directly concerned the rights of the heirs and the determination of the persons entitled to the estate.

We can think of no good purpose to be served by including in the petition for probate allegations seeking a determination as to the validity or interpretation of controversial contracts or agreements, and by then rushing through an order of judgment thereon at the same time the will is admitted to probate. The validity of such instruments is a matter to be determined by an adversary proceeding commenced in the probate court upon the filing of an application for such determination or adjudication after the hearing on the petition to probate the will and the appointment of the executor. The administration of an estate is not a single piece of litigation, but in its entirety consists of many separate and distinct judicial acts, all having for their purpose the orderly and expeditious administration and distribution of the assets of a decedent's estate pursuant to the various sections of the code. The admission of the will to probate is one such proceeding (*Price v. Gibson,* 165 Kan. 10, 18, 192 P. 2d 219).

Section 59-2204, G. S. 1947 Supp., provides for the commencement of these various probate proceedings—and, for example, in *Barrett v. McMannis,* 153 Kan. 420, 424, 110 P. 2d 774, we said the appointment of an administrator *de bonis non* was the "com-

mencement of a proceeding" under this section. That is to say, it was another proceeding, separate and distinct from the probate of the will.

Section 59-2202 recites the essential requirements of petitions generally; and section 59-2220 deals specifically, and separately, with the contents of a petition for probate of a will.

Section 59-2224 concerns the hearing to be had upon the petition for probate of a will, and certainly it neither contemplates nor authorizes a determination of the persons entitled to the estate or adjudication of the rights of the heirs by the probate court at such hearing.

It should also be noted that section 59-2233 provides for an election by the widow *after the will is admitted to probate.*

In *Pee v. Carlyle* (1926), 120 Kan. 200, 203, 243 Pac. 296, decided before the adoption of the present code, we said:

"In a proceeding to probate a will, the inquiry is limited to the single subject, 'Is the Instrument a Will?' If so, it is entitled to probate; if not, it is not entitled to probate. A will has no effect other than potentiality until it has been probated."

After the enactment of the probate code (1939), the above holding was approved in *In re Estate of Reed,* 157 Kan. 602, 606, 142 P. 2d 824, as follows:

"In a proceeding to probate a will the inquiry is limited to the question whether such instrument is entitled to probate and prior to the determination of that issue orders relating to proceedings incident thereto are not *res judicata.*" (Syl. 3.)

This subject is treated in 57 Am. Jur. 528, section 774, as follows:

"The probate of a will involves, in general, no more than a determination of the testamentary character of the instrument propounded; the testator's knowledge of the contents of the instrument and his intent to execute it as his will; the question of the factum of the will, executed and attested in the manner and form required by the state statutes at a time when the testator had the requisite' power and capacity to make a will, and in the absence of mistake, fraud, duress, or other undue influence which invalidates a will; and whether or not the will stands as executed or has been revoked. In a suit to contest a will after probate, the question is not whether the will was properly admitted to probate, but whether it shall be declared invalid in the direct proceeding. A court having exclusive jurisdiction to probate a will does not have the exclusive jurisdiction to determine the question of its jurisdiction for the litigation of issues which do not come within the scope of the inquiry properly to be made on an application to probate a will."

Also see 68 Corpus Juris 875:

"A probate proceeding is not severable, but is complete in itself and is a separate and distinct proceeding, such as from the contest of a will, and may not be combined with other proceedings."

Considering together all the sections of the probate code as well as the foregoing decisions and authorities, we must hold that the probate court did not have statutory power and authority to determine the validity of the postnuptial release or agreement at the time of hearing upon the petition for admission of the will to probate and for appointment of a representative of the estate.

Both parties cited and in various ways rely upon *In re Estate of Hoover*, 155 Kan. 647, 127 P. 2d 460, and on rehearing, 156 Kan. 31, 131 P. 2d 917. That case held that the validity of a contract between the testator and his widow could not be adjudicated in the probate court by a proceeding where no application for such an adjudication had been made, and without notice thereof to the widow. There the validity of the contract was later raised by a separate proceeding initiated by the widow. The statement at page 35 of the opinion on rehearing in the Hoover case may have been so broad as to indicate to appellees here that the procedure they chose to follow in the probate court was proper. If so, it was too broadly stated. The question now before us is one of first impression in this court, and was not considered in the Hoover case. The Hoover case is therefore not in point with the issue now under consideration.

Appellant contends also that while the two daughters and beneficiaries under the will had a right to file a petition for probate of the will, they were not proper parties to petition or apply to the probate court for an order adjudging the validity of the postnuptial release, and that such application or petition could have been filed *only* by the executor. We cannot agree with that contention. These beneficiaries, daughters of decedent, had a right to commence such a proceeding in the probate court by petition therefor *at a proper time*. That was not done, and, in view of our decision upon the other question discussed above, it may not be a matter with which we are now concerned. However, we mention it in passing because of appellant's contention that it also pertains to the probate court's jurisdiction.

From what has been said above, it is apparent that on July 13, 1946, the probate court of Washington county lacked statutory power and authority to make the order adjudicating the validity of the postnuptial release. The widow, appellant here, was entitled to

have that matter raised in the probate court after the will was admitted to probate, upon a proper application or petition therefor, and to have the matter determined upon notice and hearing. Accordingly, the judgment of the district court is reversed with directions to remand the case to the probate court for further proceedings in harmony with this opinion. It is so ordered.

THIELE, J. (dissenting): In my opinion the judgment of the trial court should be affirmed. That the probate court had jurisdiction to determine whether the widow was bound by her "release" is too clear to need comment. In its opinion this court says that question may not be inquired into when the proceeding is first commenced—it does not indicate when the probate court does have jurisdiction to hear the matter. In *In re Estate of Hoover*, 156 Kan. 31, 131 P. 2d 917, a proceeding similar to that under consideration was before the probate court. The essential difference was that the notice of hearing contained no reference to the postnuptial contract there involved. This court did not hold the probate court was without jurisdiction, but on the contrary placed its decision solely on the failure of the proponent of the will to give notice, a thing of no consequence if the court had no jurisdiction. The most that can be said against the procedure followed in the instant case, and it apparently was followed in reliance on the Hoover case, was that the question of the sufficiency of the widow's release was prematurely raised. That did not rob the probate court of jurisdiction. See *Moore v. Graham*, 151 Kan. 193, 197, 98 P. 2d 111, where it was contended a judgment was void because of premature filing of the action. It was there said the matter could have been raised by answer and that the mere fact that there was a fact which had it been pleaded would have been a defense, did not take away from the court jurisdiction over the subject matter.